**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**CIVIL ACTION NO. 26-cv-931**

| | |
|---|---|
| STARSTONE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PROFESSIONAL POLICE SERVICES, INC. D/B/A PROFESSIONAL SECURITY SERVICE; CITY OF CHARLOTTE;<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiff StarStone Specialty Insurance Company ("StarStone"), by and through its undersigned counsel, and in support of its Complaint for Declaratory Judgment, hereby states as follows:

## INTRODUCTION

1. StarStone seeks a declaration that certain policies of insurance are void *ab initio* due to material misrepresentations made at the time of the application for insurance. More specifically, StarStone seeks a declaration from the Court with respect to certain policies issued to Professional Police Services, Inc. DBA: Professional Security Service (hereafter, "Professional Police") as follows:

(A) The Commercial Lines Policy, No. WSGL002339, which was issued to Professional Police providing Commercial General Liability Coverage with limits of $1 million per "occurrence" and $3 million in the General Aggregate for the period of October 1, 2024 to October 1, 2025 (hereafter, the "2024 Policy");

(B) The renewal of the 2024 Policy which was issued to Professional Police under the same policy number providing Commercial General Liability Coverage with limits of $1 million per "occurrence" and $3 million in the General Aggregate for the period of October 1, 2025 to October 1, 2026 (hereafter, the "Renewal Policy"); and

(C) The Commercial Lines Policy, number WSGU000821, which was issued to Professional Police providing Commercial Umbrella Coverage with limits of $1 million per "occurrence" and $1 million in the General Aggregate (hereafter, the "Umbrella Policy") (The Renewal Policy and the Umbrella Policy are referenced collectively herein as the "2025 Policies"). *True and accurate copies of the 2024 Policy, the Renewal Policy and the Umbrella Policy are attached hereto as Exhibit A, Exhibit B, and Exhibit C, respectively.*

**JURISDICTION**

2. This is an action brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for determination with respect to the parties' rights and obligations under certain policies of insurance.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. An actual and justiciable controversy exists with respect to whether there is any duty to defend or indemnify Professional Police, the City of Charlotte, or any other insured under the Policies.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in Mecklenburg County, North Carolina.

## THE PARTIES

6. StarStone is a foreign insurance corporation incorporated under Delaware law, with its principal place of business in Cincinnati, Ohio.

7. Professional Police Services, Inc. is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business located in Mt. Holly, North Carolina. Professional Police operates under the trade name Professional Security Service.

8. Defendant City of Charlotte is a municipal corporation in North Carolina which operates the commercial transit system commonly referred to as the Charlotte Area Transit System ("CATS"). The City is named as a potential necessary party to these proceedings by virtue of its contractual relationship with Professional Police. *A true and accurate copy of Transit Security Services Contract # 2023000735 executed between the City and Professional Police on or about July 15, 2023 (hereafter, the "Security Services Contract") will be made available to the Court upon request.*

## FACTUAL BACKGROUND

### A. The Applications

9. On or about June 21, 2024, Professional Police submitted an Insurance Application for Security, Alarm & Investigative Firms (the "2024 Application"). *A true and accurate copy of the 2024 Application is attached hereto as Exhibit D.*

10. In the 2024 Application, Professional Police's principal and owner, Lee Ratliff ("Mr. Ratliff") answered the following pertinent questions:

13. List your five largest clients & describe the service(s) you provide to them:

Mecklenburg County-Observe and Patrol, Customer Service, Write Reports

Charlotte Area Transit Systems-Observe and Patrol, Customer Service, Write Reports

Sharon Towers-Observe and Patrol, Customer Service, Write Reports

Atrium Health-Observe and Patrol, Customer Service, Write Reports

Windsor Jewelers-Observe and Patrol, Customer Service, Write Reports

*    *    *

16. What are your incident reporting procedures? Online reporting system in real time

*    *    *

Coverages - General Liability and Errors & Omissions

Complete this section if applying for General Liability.

1. Limits desired: ☐ 500k/1M ☐ 1M/1M ☐ 1M/2M ☑ Other 1 mil/3 mil
2. Deductible per occurrence: ☑ $1,000 ☐ $2,500 ☐ $5,000 ☐ $10,000 ☐ over $10,000

*    *    *

5. During the past 4 years have you had any claims for damages and/or incidents which may result in claims? ☐ Yes ☑ No

**Ex. D.**

11. Mr. Ratliff executed the 2024 Application subject to the following affirmation:

**THIS APPLICATION MAY NOT BE USED TO BIND COVERAGES AND NO COVERAGE COMMENCES.** Completion of this application by a prospective insurance buyer is for the purpose of transmitting information only. Any agreement or contract binding insurance coverage must be done on a separate document. **COVERAGE WILL COMMENCE** only upon the effective date of a separate contract binding insurance coverage (i.e. a policy or official binder form) issued by an agent authorized by the Company.

The applicant hereby agrees that the foregoing statements and answers are a true representation of all the facts and circumstances with regard to the risk to be insured to the best of the applicant's knowledge and the same are therefore made the basis of any policy of insurance issued.

[signature] 06/21/2024

Applicant's Signature Date

**Ex. D.**

12. Based on the representations contained in the 2024 Application, StarStone first issued the Commercial Lines Policy, No. WSGL002339, to Professional Police for the period of October 1, 2024 to October 1, 2025 (the "2024 Policy").

13. The 2024 Policy provides limits of $1 million per "occurrence" and $3 million in the General Aggregate, excess of a $1,000 per "occurrence" deductible.

14. Professional Police requested renewal of the 2024 Policy via its Application for Security, Alarm & Investigative Firms executed and submitted on or about September 5, 2025

(hereafter, the "2025 Application"). *A true and accurate copy of the 2025 Application is attached hereto as Exhibit E.*

15. In the 2025 Application, Professional Police's principal and owner, Lee Ratliff ("Mr. Ratliff") answered the following pertinent questions:

13. List your five largest clients & describe the service(s) you provide to them:
Mecklenburg County-Observe and Patrol, Customer Service, Write Reports
Charlotte Area Transit Systems-Observe and Patrol, Customer Service, Write Reports
Sharon Towers-Observe and Patrol, Customer Service, Write Reports
Atrium Health-Observe and Patrol, Customer Service, Write Reports
Windsor Jewelers-Observe and Patrol, Customer Service, Write Reports

* * *

16. What are your incident reporting procedures? Online reporting system in real time

* * *

Coverages - General Liability and Errors & Omissions

Complete this section if applying for General Liability.

1. Limits desired: ☐ 500k/1M ☐ 1M/1M ☐ 1M/2M ☑ Other 1 mil/3 mil
2. Deductible per occurrence: ☑ $1,000 ☐ $2,500 ☐ $5,000 ☐ $10,000 ☐ over $10,000

* * *

5. During the past 4 years have you had any claims for damages and/or incidents which may result in claims? ☐ Yes ☑ No

**Ex. E.**

16. Mr. Ratliff executed the 2025 Application subject to the following affirmation:

**THIS APPLICATION MAY NOT BE USED TO BIND COVERAGES AND NO COVERAGE COMMENCES.** Completion of this application by a prospective insurance buyer is for the purpose of transmitting information only. Any agreement or contract binding insurance coverage must be done on a separate document. **COVERAGE WILL COMMENCE** only upon the effective date of a separate contract binding insurance coverage (i.e. a policy or official binder form) issued by an agent authorized by the Company.

The applicant hereby agrees that the foregoing statements and answers are a true representation of all the facts and circumstances with regard to the risk to be insured to the best of the applicant's knowledge and the same are therefore made the basis of any policy of insurance issued.

[signature] 09/05/2025

Applicant's Signature Date

**Ex. E.**

17. Based on the representations contained in the 2025 Application, StarStone issued the Renewal Policy and the Umbrella Policy for the period of October 1, 2025 to October 1, 2026 (collectively, the "2025 Policies").

**B. The Policies**

18. The 2024 Policy and the Renewal Policy each provide coverage subject to the following relevant terms and conditions:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.
>
> The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.
>
> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * *

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the

insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**Ex. A, Ex. B.**

19. The Umbrella Policy provides coverage subject to the following relevant terms and conditions:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** –Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure

unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**e.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**f.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * *

**SECTION IV – CONDITIONS**

* * *

**3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> **(2)** Authorize us to obtain records and other information;
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>
> * * *
>
> **7. Representations Or Fraud**
> By accepting this policy, you agree:
> **a.** The statements in the Declarations are accurate and complete;
> **b.** Those statements are based upon representations you made to us;
> **c.** We have issued this policy in reliance upon your representations; and
> **d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**Ex. C.**

## C. The Notices

20. On October 2, 2025, StarStone first received notice of a fatal shooting incident that occurred on or about April 12, 2025 via email from Professional Police's insurance agent enclosing a copy of the lawsuit styled as *Dwayne Pennant, Administrator of the Estate of Qualo Trevon Daniels v. City of Charlotte and Professional Police*, Case No. 25CV048025-590 in the Court of Mecklenburg County, North Carolina (the "Daniels Notice"). *A true and accurate copy of the Daniels Notice is attached hereto as Exhibit F.*

21. On or about May 19, 2026, StarStone first received notice of a stabbing incident that occurred on December 5, 2025 via email from Professional Police's insurance agent. At that time, Professional Police provided copies of a tender for defense and indemnification from the City of Charlotte and a pre-suit demand from Kenyon Kareem-Shemar Dobie dated May 6, 2026 (hereafter, the "Dobie Notice"). *A true and accurate copy of the Dobie Notice is attached hereto as Group Exhibit G.*

22. On or about June 4, 2026, StarStone first received notice of the lawsuit styled as *James M. Godfrey v. Transit Management of Charlotte, Inc. et al.,* Case No. 25CV050595-590 in the Court of Mecklenburg County, North Carolina[1], which was filed in connection with an assault and battery that took place on March 6, 2025 and allegedly resulted in permanent, disabling injuries including, but not limited to, spinal cord injury at C1-C4 level resulting in quadriplegia (hereafter, the "Godfrey Notice"). *A true and accurate copy of the Godfrey Notice is attached hereto as <u>Group Exhibit H</u>.*

23. On or about June 8, 2026, StarStone first received notice of a fatal stabbing incident that occurred on August 22, 2025 via email directly from the City of Charlotte enclosing a June 5, 2026 tender for defense and indemnification of the City in connection with a pre-suit settlement demand (hereafter, the "Zarutska Notice"). *A true and accurate copy of the Zarutska Notice is attached hereto as <u>Group Exhibit I</u>.*

## <u>FIRST CAUSE OF ACTION</u>
### ***The 2025 Policies Are Void Based On Material Misrepresentations***

24. StarStone incorporates by reference Paragraphs 1 through 23 of this Complaint as though fully set forth herein.

25. All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy. N.C. Gen. Stat. § 58-3-10.

26. The 2025 Policies each expressly state that "[b]y accepting this policy, [Professional Police] agree[s]: the statements in the Declarations are accurate and complete; those statements are based upon representations [Professional Police] made to StarStone; and

---

[1] Professional Police appears to have been added as a defendant via the First Amended Complaint filed on or about April 23, 2026.

[StarStone] issued this policy in reliance upon [Professional Police's] representations." *See* **Ex. A-B** at Section IV., Conditions, Paragraph 6. (Representations); *see also,* **Ex. C** at Section IV., Conditions, Paragraph 7. (Representations Or Fraud).

27. Section IV., Conditions, Paragraph 7. of the Umbrella Policy further states that Professional Police agreed, by accepting the Umbrella Policy, "[t]his policy is void in any case of fraud by [Professional Police] as it relates to this policy or any claim under this policy." **Ex. C** at Section IV., Conditions, Paragraph 7. (Representations Or Fraud).

28. Representations in an application for insurance are considered material where the knowledge or ignorance of it would naturally and reasonably influence the judgment of the insurance company either in making the insurance contract, in estimating the degree and character of the risk, or in establishing the premium.

29. StarStone originally issued the 2024 Policy to Professional Police whereby it agreed to provide Commercial General Liability Coverage for the period of October 1, 2024 to October 1, 2025 with limits of $1 million per "occurrence" and $3 million in the General Aggregate, subject to the terms and conditions set forth therein. **Ex. A.**

30. On or about September 5, 2025, Professional Police sought to renew the 2024 Policy together with the addition of the Umbrella Policy by submitting the 2025 Application. **Ex. E.**

31. In the 2025 Application, Professional Police again affirmatively represented its incident reporting procedures as "Online reporting system in real time." **Ex. E.**

32. Despite this, in the 2025 Application, Professional Police also affirmatively represented that it was not aware of any claims for damages and/or incidents which may result in claims during the past 4 years. **Ex. E.**

33. During the policy period of the 2024 Policy from October 1, 2024 to October 1, 2025, Professional Police did not report any claims or incidents which may result in a claim.

34. By executing the 2025 Application on September 5, 2025, Professional Police agreed that, to the best of its knowledge, all of the statements and answers set forth therein were true representations of the facts and circumstances with regard to the risk to be insured and were therefore made the basis of any policy of insurance issued. **Ex. E.**

35. In reliance upon the 2025 Application, StarStone issued both the Renewal Policy and agreed to issue the Umbrella Policy providing additional coverage for Professional Police, subject to the terms set forth therein. **Ex. B.**

36. Contrary to the representations contained in the 2025 Application, on September 5, 2025, Professional Police was aware of the following incidents based on its real time reporting system:

- The fatal shooting of Qualo Trevon Daniels on April 12, 2025;
- An assault and battery perpetrated against James M. Godfrey which reportedly took place on March 6, 2025 and allegedly resulted in permanent, disabling injuries including, but not limited to, a spinal cord injury at the C1-C4 level resulting in quadriplegia
- The fatal stabbing of Iryna Zarutska on August 22, 2025 which made national headlines.

**Ex. F, Ex. H, Ex. I.**

37. By failing to provide notice of any of these incidents during the period of the 2024 Policy and affirmatively representing that Professional Police did not have knowledge of any claims for damages and/or incidents which may result in claims during the past 4 years,

Professional Police deprived StarStone of any ability to accurately assess the degree and character of the risk sought to be insured by the 2025 Policies.

38. StarStone would not have issued the 2025 Policies to Professional Police if it had possessed knowledge of these incidents.

39. Alternatively, StarStone would have declined to issue the Umbrella Policy to Professional Police providing additional coverage.

WHEREFORE, StarStone seeks a declaration that the representations contained in the 2025 Application are material and/or fraudulent and therefore, the Policies are void as a matter of law.

## SECOND CAUSE OF ACTION

***In the Alternative, the Requirements of the Renewal Policy's Bodily Injury & Property Damage Liability Insuring Agreement Have Not Been Satisfied***

40. Under the Renewal Policy, the Bodily Injury & Property Damage Liability Insuring Agreement provides that StarStone will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **Ex. B.**

41. The Insuring Agreement further provides this insurance applies to "bodily injury" and "property damage" only if: (1) it is caused by an "occurrence"; (2) the "bodily injury" or "property damage" occurs during the policy period; and (3) prior to the policy period, no insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part. **Ex. B.**

42. The Insuring Agreement provides that "bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured: (1) reports all, or any part, of the "bodily injury" or "property damage" to StarStone or any other insurer; (2) receives a written or verbal demand or claim for damages because of "bodily injury" or "property

damage"; or (3) becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. **Ex. B.**

43. The Renewal Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. **Ex. B.**

44. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. **Ex. B.**

45. In both the 2024 Application and the 2025 Application, Professional Police stated that its incident reporting procedures include "online reporting system in real time". **Ex. D, Ex. E.**

46. Professional Police had knowledge of the "bodily injuries" allegedly sustained in the Godfrey Incident on March 6, 2025; the Daniels Incident on April 12, 2025; and the Zarutska Incident on August 22, 2025 in real time.

47. Because Professional Police had knowledge of the "bodily injuries" sustained in these incidents prior to the inception of the Renewal Policy on October 1, 2025, the requirements for coverage under the Bodily Injury & Property Damage Liability Insuring Agreement of the Renewal Policy have not been satisfied.

WHEREFORE, StarStone respectfully seeks a declaration that there is no duty to defend or indemnify Professional Police or any other insured under the Renewal Policy.

## THIRD CAUSE OF ACTION

***In the Alternative, the Requirements of the Umbrella Policy's Bodily Injury & Property Damage Liability Insuring Agreement Have Not Been Satisfied***

48. Under the Umbrella Policy, the Bodily Injury and Property Damage Liability Insuring Agreement provides that StarStone will pay "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. **Ex. C.**

49. The Umbrella Policy further provides that this insurance applies to "bodily injury" and "property damage" only if: (A) the "bodily injury" or "property damage" is caused by an "occurrence"; (B) the “bodily injury” or “property damage” occurs during the policy period; and (C) prior to the policy period, no insured knew that the "bodily injury" or "property damage" had occurred, in whole or in part. **Ex. C.**

50. Under the Umbrella Policy, “bodily injury” or “property damage” will be deemed to have been known to have occurred at the earliest time when any insured: (A) reports all, or any part, of the “bodily injury” or “property damage” to StarStone or any other insurer; (B) receives a written or verbal demand or claim for damages because of the “bodily injury” or “property damage”; or (C) becomes aware by any other means that “bodily injury” or “property damage” has occurred or has begun to occur. **Ex. C.**

51. The Umbrella Policy defines “bodily injury” as bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" also includes mental anguish or other mental injury resulting from "bodily injury". **Ex. C.**

52. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. **Ex. C.**

53. In the 2025 Application, Professional Police stated that its incident reporting procedures include “online reporting system in real time”. **Ex. E.**

54. The assault and battery of James Godfrey occurred on March 6, 2025. **Ex. H.**

55. The fatal shooting of Qualo Trevon Daniels occurred on April 12, 2025. **Ex. F.**

56. The fatal stabbing of Iryna Zarutska occurred on August 22, 2025. **Ex. I.**

57. Professional Police was aware of the “bodily injuries” sustained in these incidents prior to the inception of the Umbrella Policy on October 1, 2025.

58. The requirements of the Umbrella Policy's Bodily Injury & Property Damage Liability Insuring Agreement have not been satisfied.

WHEREFORE, StarStone seeks a declaration that there is no duty to defend or indemnify Professional Police or any other insured under the express terms of the Umbrella Policy.

## FOURTH CAUSE OF ACTION

***Professional Police Has Breached The Notice Requirements of the 2024 Policy***

59. The 2024 Policy and the Renewal Policy (collectively, the "CGL Policies") are subject to the same terms and conditions. **Ex. A, Ex. B.**

60. Among other conditions, Section IV. (Conditions) of the 2024 Policy and the Renewal Policy provides that Professional Police must see to it that StarStone is notified as soon as practicable of an "occurrence" or an offense which may result in a claim with notice including, to the extent possible: (1) how, when and where the "occurrence" or offense took place; (2) the names and addresses of any injured persons and witnesses; and (3) the nature and location of any injury or damage arising out of the "occurrence" or offense. **Ex. A, Ex. B.**

61. By failing to provide notice of the assault and battery of James Godfrey on March 6, 2025 until June 3, 2026, Professional Police breached the conditions of the 2024 Policy.

62. By failing to provide notice of the fatal shooting of Qualo Trevon Daniels on April 12, 2025 until October 2, 2025, Professional Police breached the conditions of the 2024 Policy.

63. By failing to provide notice of the fatal stabbing of Iryna Zarutska on August 22, 2025 until June 5, 2026, Professional Police breached the conditions of the 2024 Policy.

64. The delay in providing notice has not only materially prejudiced StarStone's ability to investigate and/or to explore pre-suit resolution of each of these matters but also its ability to set appropriate premiums prior to agreeing to renewal of the 2024 Policy.

WHEREFORE, StarStone seeks a declaration that there is no duty to defend or indemnify Professional Police or any other insured under the 2024 Policy.

## **PRAYER FOR RELIEF**

StarStone respectfully requests that this Court enter a declaratory judgment finding:

(a) The 2025 Policies are void based on material misrepresentations in the 2025 Application.

(b) Alternatively, the 2025 Policies do not apply to the Godfrey Incident, the Daniels Incident, and/or the Zarutska Incident due to Professional Police's prior knowledge of the alleged "bodily injuries" before the inception of the 2025 Policies on October 1, 2025.

(c) The 2024 Policy does not apply to the Godfrey Incident, the Daniels Incident, and/or the Zarutska Incident because StarStone has been materially prejudiced by Professional Police's delay in submitting notice of these matters.

Dated: November 3, 2026

Respectfully submitted,

/s/ Ashley S. Eldridge

Ashley S. Eldridge
NC Bar No. 62987
Cozen O'Connor
One Wells Fargo Center
301 South College Street, Suite 2020
Charlotte, NC 28202
P: (704) 376-3400
E: aeldridge@cozen.com

Gary L. Gassman (*pro hac vice forthcoming)*
Abigail C. Kanavos (*pro hac vice forthcoming*)
Cozen O'Connor
123 N Wacker Drive - Suite 1800

Chicago, IL 60606
312-474-7130
Email: ggassman@cozen.com
Email: akanavos@cozen.com
*Attorneys for StarStone Specialty Insurance Company*